## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

|  |  |
|---|---|
| DAVID MOSER, a/k/a JOSE DALLMAN, | |
| Plaintiff, | |
| v. | Case No. 11 C 3563 |
| RAMON AYALA p/k/a DADDY YANKEE; EL CARTEL RECORDS; INTERSCOPE RECORDS; and DOES 1-20, Inclusive, | Hon. Harry D. Leinenweber |
| Defendants. | |

### MEMORANDUM OPINION AND ORDER

Before the Court are Defendant Interscope Record's (hereinafter, "UMG") Combined Motion for Transfer of Venue and Motion to Strike Claims for Punitive Damages, Statutory Damages, and Attorneys' Fees (ECF No. 58) and Defendants Ramon Ayala p/k/a Daddy Yankee, El Cartel Records and Los Cangris, Inc.'s (hereinafter, "the Ayala Defendants") Amended Motion to Dismiss the Second Amended Complaint or, in the Alternative, to Transfer Case (ECF No. 77). For the reasons stated herein, UMG's Motion is denied, the Ayala Defendants' Motion to Dismiss is granted in part and denied in part, and the Ayala Defendants' Motion to Transfer venue to the District of Puerto Rico is granted.

## I. __BACKGROUND__

Plaintiff David Moser a/k/a Jose Dallman ("Plaintiff") is a songwriter in San Miguel, Mexico. He alleges that in 1998, he wrote the music and lyrics to a song called "*Anoche*." He claims that *Anoche* was an original song that constituted copyrightable matter fixed in a tangible medium. Plaintiff performed *Anoche* in San Miguel, and it was played on the local radio.

Plaintiff met Salomon Canelo ("Canelo"), a music producer who frequented the San Miguel music scene. Canelo was present on many occasions when Plaintiff performed *Anoche*. Canelo also lived in the apartment downstairs from Plaintiff. When Canelo moved out, Plaintiff discovered the music and lyrics to *Anoche* in the vacant apartment, which Plaintiff believes Canelo stole.

Defendant Ramon Ayala ("Ayala") is a musical composer and recording artist who performs as "Daddy Yankee." Ayala pioneered reggaeton, a fusion of reggae and rap music unique to Puerto Rico. Ayala and the other Defendants released a song called "*Rompe*." *Rompe* was produced by Monserrate Sosa (p/k/a D J Monserrate) and John Doe (p/k/a DJ Urba), published by Defendant Los Cangris, Inc., copyrighted by Defendant El Cartel Records ("ECR"), and distributed by Universal Music Argentina, S.A., Defendant Interscope Records ("UMG") and HHH Artists, Inc.

*Rompe* was a commercial success, holding the #1 spot on Billboard's Hot Latin Tracks chart for more than three months and

reaching #24 on Billboard's Hot 100 chart.  Plaintiff alleges that it was the most popular song on *Barrio Fino en Directo*, the album on which it was released.

Plaintiff claims that there is "substantial similarity" between *Anoche* and *Rompe* because they "coincide melodically, rhythmically and harmonically" or, alternatively, because *Rompe* is a derivative work based on *Anoche*.  Third Am. Compl. ¶¶ 20-21. Plaintiff alleges that Canelo falsely represented to Defendants that he had the right to exploit *Anoche* in *Rompe*.  As such, the Defendants had access to, copied and incorporated substantial portions of *Anoche* into *Rompe*.  Plaintiff claims that the Defendants were aware of and contributed to *Anoche* being exploited in the United States, Latin America and elsewhere.  Plaintiff claims *Rompe* has been performed and played "numerous times" in this District.  *Id.* ¶ 24.  Plaintiff alleges that the Defendants have and will continue to profit from the release of *Rompe*, and will continue to exploit *Anoche*.

Plaintiff claims that he is the owner of the copyright for *Anoche* under U.S. law and possesses a copy of *Anoche's* music and lyrics certified by a Mexican notary on February 11, 2003.  On May 26, 2011, he filed this action alleging direct copyright infringement, contributory copyright infringement and vicarious copyright infringement claims against all Defendants.  The Ayala Defendants now move to dismiss the case for lack of jurisdiction

under Rule 12(b)(2), or in the alternative, to transfer the case to the District of Puerto Rico. UMG moved to transfer the case to either the Central District of California or the District of Puerto Rico, and to strike Plaintiff's claims for punitive damages, statutory damages and attorneys' fees.

In support of the Motion to Dismiss, Ayala offered a November 8, 2012 declaration (the "Ayala Declaration") on behalf of the Ayala Defendants. In it, he states that he is a citizen and resident of Puerto Rico. He claims that he does not own property, maintain an office or employees, advertise or solicit business, or vote in Illinois. He states that neither ECR nor Los Cangris, of which he is a 50% owner of both, have any contacts with Illinois. Ayala states that *Rompe* was written, recorded and produced in Puerto Rico. All of the people involved in writing, recording and producing *Rompe*, including DJ Monserrate, Eddie Dee and DJ Urba are located in Puerto Rico (except for Samuel Fish in Miami, Florida). Ayala claims that as of June 6, 2012, his only contacts with Illinois were: (1) three concerts in 2005, 2007 and 2010 in Rosemont, Illinois; (2) an appearance in Macy's in 2008 to promote a cologne; and (3) an appearance at an Illinois Best Buy in 2010 to promote his music.

The Court allowed the parties to engage in jurisdictional discovery. *See* 6/26/12 Order ECF No. 88. In its response to Defendants' Motions, Plaintiff offered materials in support of

- 4 -

three general categories of Illinois contacts: sales and
distribution of *Rompe*, Ayala's personal appearances, and
advertising and soliciting.

With respect to sales and distribution of *Rompe*, Ayala and El
Cartel signed two distribution contracts with UMG, both effective
July 19, 2005. The first is a letter agreement that grants UMG a
license to reproduce and distribute Ayala's music in the United
States. The second, entitled "Manufacturing & Distribution Foreign
License and Profit Split Agreement" grants UMG exclusive
distributorship in the United States. Ayala admitted that *Rompe*
and *Barrio Fino en Directo* were sold in Illinois, but lacked
personal knowledge as to whether they still are. UMG's distributor
admitted that it distributed 107 copies, and Best Buy indicated it
sold 434 copies, of *Barrio Fino en Directo* in Illinois since
May 26, 2008. *Amazon.com* produced records showing sales of 604
copies of *Barrio Fino en Directo* or *Rompe* to Illinois residents,
which comprised 2.4% of the 24,722 worldwide units sold. And while
*iTunes* is unable to segregate sales by state, it has sold 213,569
copies of *Rompe* in the United States since May 26, 2008.

With respect to personal appearances in Illinois, Plaintiff
offered materials allegedly showing that Ayala appeared several
more times in Illinois than stated in his declaration "to promote
his image and the Ayala Defendants' music." Pl.'s Resp. at 12.

Plaintiff also provided unauthenticated video he claims shows Ayala performing *Rompe* at a 2010 Illinois concert.

In regard to marketing in Illinois, Plaintiff indicates that Ayala's music is marketed actively in this state. Plaintiff provides discovery responses from Cardenas Marketing Network ("CMN"), a marketing and sponsorship agency headquartered in Chicago. CMN has paid ECR $279,138.05 since May 26, 2008 in connection with several concerts Ayala performed outside of Illinois, but no money for concerts within Illinois. Plaintiff also submitted printed and video advertisements for Ayala's Illinois concerts, as well as the declaration of an attorney who photographed a poster for *Bario Fino en Directo* at a Chicago music store on June 4, 2012.

Plaintiff argues that these connections are sufficient for this Court to assert jurisdiction over the Ayala Defendants. The Ayala Defendants disagree, or in the alternative, claim that the case should be transferred to the District of Puerto Rico. UMG does not dispute jurisdiction, but instead claims that the case should be transferred to the Central District of California or the District of Puerto Rico.

## II. **ANALYSIS**

### A. Ayala Defendants' Motion to Dismiss

#### 1. *Federal Rule of Civil Procedure 12(b)(2)*

The Ayala Defendants claim that the Court lacks personal jurisdiction over them, or, at most, has specific personal jurisdiction over Ayala due to concerts he performed in Illinois. Plaintiff argues that all the Ayala Defendants are subject to this Court's jurisdiction.

##### a. *Rule 12(b)(2) Legal Standard*

A complaint need not include facts alleging personal jurisdiction. *Purdue Research Found. v. Sanofi-Synthelabo, S.A.,* 338 F.3d 773,781-82 (7th Cir. 2003). But when a defendant challenges personal jurisdiction by moving to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(2), the plaintiff bears the burden of proving that jurisdiction exists. *Id.* at 782. When a district court decides to rule on a defendant's motion to dismiss based on written materials, and not an evidentiary hearing, the plaintiff "need only make out a *prima facie* case of personal jurisdiction." *Id.* Even so, "once the defendant has submitted affidavits or other evidence in opposition to the exercise of jurisdiction, the plaintiff must go beyond the pleadings and submit affirmative evidence supporting the exercise of jurisdiction." *Id.* at 782-83. A court accepts as true the plaintiff's undisputed allegations, and disputes in the evidence are resolved in the

Plaintiff's favor. *United Wholesale LLC v. Traffic Jam Events*, No. 11 c 2637, 2012 U.S. Dist. LEXIS 76724 (N.D. Ill. Jun. 4, 2012).

Federal subject matter jurisdiction exists in this case because Plaintiff's claims are for copyright infringement. Because the Copyright Act does not provide for nationwide service of process, personal jurisdiction is based on the law of the forum state, Illinois. *Poparic v. Lincoln Square Video,* No. 08 C 3491, 2009 U.S. Dist. LEXIS 53845 at *3 (N.D. Ill. Jun. 25, 2009). The Illinois long-arm statute authorizes personal jurisdiction to the full extent permitted by the federal Constitution. 735 Ill. Comp. Stat. 5/2-209(c). A district court may exercise jurisdiction only if both the state and federal constitutional requirements are satisfied. *Illinois v. Hemi Group LLC,* 622 F.3d 754, 756 (7th Cir. 2010). Because Illinois permits personal jurisdiction if it would be authorized by either the Illinois Constitution or the United States Constitution, the state statutory and federal constitutional requirements merge. *uBID, Inc. v. The GoDaddy Group, Inc.*, 623 F.3d 421, (7th Cir. 2010). A single analysis will thus suffice.

The Seventh Circuit described "the current state of the constitutional dimension of personal jurisdiction" as follows:

> The defendant must have minimum contacts with
> the forum state such that the maintenance of
> the suit does not offend traditional notions
> of fair play and substantial justice. Those
> contacts may not be fortuitous. Instead, the
> defendant must have purposefully established

> minimum contacts within the forum State before
> personal jurisdiction will be found to be
> reasonable and fair. Crucial to the minimum
> contacts analysis is a showing that the
> defendant should reasonably anticipate
> being haled into court in the forum State, because
> the defendant has purposefully availed itself
> of the privilege of conducting activities
> there.

*Hemi Group*, 622 F.3d at 757 (quoting *Kinslow v. Pullara,* 538 F.3d 687, 691 (7th Cir. 2008)).

There are two forms of personal jurisdiction: "specific" and "general." *Lincoln Diagnostics, Inc. v. Panatrex, Inc.*, 2008 U.S. Dist. LEXIS 41649 at *36. Specific jurisdiction refers to jurisdiction "arising out of or related to the defendant's contacts with the forum." *Id.* A court may exercise specific jurisdiction over a defendant if that defendant "purposefully established minimum contacts within the forum State" that "make personal jurisdiction reasonable and fair under the circumstances." *Id.* General jurisdiction is based upon contacts of a "continuous and systematic nature." *Id.*

### b. Specific Jurisdiction Analysis

Specific jurisdiction is appropriate where (1) the defendant has purposefully directed his activities at the forum state or purposefully availed himself of the privilege of conducting business in that state, and (2) the alleged injury arises out of the defendant's forum-related activities. *See Toma v. Motley Crue, Inc.,* No. 11 C 6766, 2012 U.S. Dist. LEXIS 145026 at *6 (N.D. Ill.

- 9 -

Oct. 9, 2012). The ultimate constitutional standard for the exercise of specific jurisdiction is whether it is "fair and reasonable to call the defendant into the state's courts to answer the plaintiff's claim." *uBID,* 623 F.3d at 426.

        i. Minimum Contacts and Purposeful Availment

Plaintiff alleges that each of the named defendants "were aware of, participated in and contributed to the exploitation of [*Rompe*], in the United States, including in the Northern District of Illinois . . . through sales of compact discs, digital downloads, radio and television airplay and otherwise." Third Am. Compl. at 6. Plaintiff argues that the Ayala Defendants subjected themselves to specific jurisdiction through two activities – the performance and distribution of *Rompe* in Illinois. The Ayala Defendants argue that Plaintiff has not demonstrated the necessary contacts for personal jurisdiction.

Plaintiff has shown the necessary purposeful availment and minimum contacts of two of the Ayala Defendants through the sales and distribution of *Rompe* in Illinois. ECR and Ayala signed two distribution agreements with UMG, which granted UMG a license to reproduce Ayala's music in the United States and gave UMG an exclusive distributorship in the United States. Ayala admits that *Rompe* and *Barrio Fino en Directo* were sold in Illinois. Since May 26, 2008, UMG's agent has distributed 107 copies of *Barrio Fino en Directo* in Illinois, Best Buy has sold 434 copies in Illinois,

and *Amazon.com* has sold 604 copies of *Barrio Fino en Directo* or *Rompe* to Illinois residents.

In this Circuit, "a company selling its products across the country may be subject to personal jurisdiction in Illinois if it has sold those products to customers in Illinois." *Dental Arts Lab., Inc. v. Studio 360 the Dental Lab, LLC,* No. 10-CV-4535, 2010 U.S. Dist. LEXIS 124029 at *16 (Nov. 23, 2010). In *Illinois v. Hemi Group, LLC,* Illinois sued Hemi Group, a New Mexico company, for selling cigarettes to Illinois residents and failing to report those sales in violation of federal law. *Illinois v. Hemi Group, LLC*, 622 F.3d at 755. Hemi Group argued that it was not a resident of Illinois, registered to do business in Illinois, had no offices or employees in Illinois, did not bank in Illinois and did not advertise in print media in Illinois. *Id.* at 756. Hemi Group maintained websites to sell discounted cigarettes, and while not specifically stating on any of them that it would sell to Illinois residents, they stated they would sell to every state except New York. *Id.* at 755-56. The Seventh Circuit found that Hemi Group's contacts with Illinois were sufficient, noting:

> Hemi expressly elected to do business with the residents of forty-nine states. Although listing all forty-nine states by name would have made a stronger case for jurisdiction in this case, inasmuch as it would have expressly stated that Hemi wanted to do business with Illinois residents, the net result is the same – Hemi stood ready and willing to do business with Illinois residents. And Hemi, in fact,

- 11 -

> knowingly did do business with Illinois residents.

*Id.* at 758; *see also Dental Arts Lab.*, 2010 U.S. Dist. LEXIS 124029 at *17-18 (finding that company holding itself open to selling products to residents of any state, and which sold products in Illinois, had purposefully availed itself of the privilege of conducting activities in Illinois).

Like the Hemi Group, Ayala and ECR elected to do business with all 50 states, including Illinois, by entering into a distribution relationship with UMG. That Ayala and ECR had intermediaries between themselves and the Illinois customers does not matter, as individuals at the head of a distribution chain can still be subject to personal jurisdiction where their products are distributed. As the Seventh Circuit explained:

> Such a seller, because of intervening levels of distribution, may not have mentally formed a purpose to sell its product to the particular individual buyer who is suing it, but the seller surely has purposefully chosen to sell generally to buyers in the forum state and reaps the economic benefit of doing so. A seller at the head of a distribution network thus satisfies the requisite foreseeability of due process where it delivers its products into the stream of commerce with the expectation that these products will be purchased by consumers in the forum state.

*Giotis v. Apollo of Ozarks, Inc.*, 800 F.2d 660, 667 (7th Cir. 1986). When they entered into nationwide distribution agreements with the purpose of placing *Rompe* and *Barrio Fino en Directo* in the stream of commerce, Ayala and ECR could expect that their products

- 12 -

would be purchased by consumers in Illinois, and thus purposely availed themselves of the benefits of this forum. They should thus reasonably anticipate being haled into an Illinois court.

Plaintiff, however, failed to plead any facts, or argue in its briefs, how Los Cangris was connected to Illinois or how it purposefully availed itself to the benefits of this forum. Los Cangris was not a party to the distribution agreements, and Plaintiff provided no contacts between Los Cangris and Illinois. As such, Plaintiff has failed to show that this Court has either specific or general jurisdiction over Los Cangris.

### ii. Relatedness

For the Court to exercise specific jurisdiction over Ayala or ECR, Plaintiff's claims must arise out of Defendants' contacts with Illinois. *Hemi Group*, 622 F.3d at 759. This requirement is satisfied here, as Ayala and ECR entered into an agreement to distribute its alleged infringing materials across the United States, including in Illinois, and those materials were sold to Illinois customers. Plaintiff alleges that those materials violate his copyright. Thus, the bases for Plaintiff's claims derive directly from Ayala and ECR's conduct in the forum.

### iii. Fairness

As a final matter, it is necessary to examine whether the exercise of jurisdiction would violate "traditional notions of fair play and substantial justice." *Asahi Metal Indus. Co. v. Superior*

- 13 -

*Court of Cal.*, 480 U.S. 102, 113 (1987). An examination of fair play and substantial justice takes into account: (1) the burden on the defendant; (2) the forum state's interest in adjudicating the dispute; (3) the plaintiff's interest in obtaining convenient and effective relief; (4) the interstate judicial system's interest in efficiently resolving controversies; and (5) the shared interest of the states in further fundamental substantive social policies. *uBID*, 623 F.3d at 432. However, "[t]hese factors rarely will justify a determination against personal jurisdiction because there are other mechanisms available to the court – such as choice of law and transfer of venue – to accommodate the various interests at play." *Hemi Group,* 622 F.3d at 760.

While some of these concerns are close, none of them dictates that the Court should choose not to exercise jurisdiction. The burden on the Defendants is not slight, however. UMG is in California, and Ayala is a resident of Puerto Rico, both of which are a significant distance from Chicago, Illinois. But Ayala for his music career, and no Defendant has argued that they would be unable to travel here or that they will not receive a fair trial in Illinois. Plaintiff is not a resident of Illinois, so this is not a case in which Illinois has the strong interest in protecting one of its residents from having their copyrights infringed. However, it may have some interest in protecting its residents from being sold infringing materials. While the fair play considerations are

not overwhelmingly in Plaintiff's favor, as noted above, there are other mechanisms for the Court to accommodate the various interests involved.

### 2. *Forum Non Conveniens*

The Ayala Defendants also move to dismiss the case pursuant to the doctrine of *forum non conveniens*. They argue that doing so would "best serve[] the convenience of the parties and the ends of justice." Defs.' Mot. to Dismiss at 8. However, the doctrine of *forum non conveniens* is inapplicable to this case.

A *forum non conveniens* analysis requires that a defendant establish that an adequate alternate forum is available. The Ayala Defendants claim such an alternate forum exists – the District of Puerto Rico. However, use of *forum non conveniens* is limited to instances in which the alternative forum is foreign. As the Supreme Court explained in *Sinochem International Co. v. Malaysian International Shipping Corp.*:

> The common-law doctrine of *forum non conveniens* has limited continuing application in federal courts only in cases where the alternative forum is abroad, and perhaps in rare instances where a state or territorial court serves litigational convenience best. For the federal court system, Congress has codified the doctrine and has provided for transfer, rather than dismissal, when a sister federal court is the more convenient place for trial of the action.

*Sinochem International Co. v. Malaysian International Shipping Corp.*, 549 U.S. 422, 430 (2007). The Ayala Defendants argue that

- 15 -

a sister federal court, not a foreign court, is an adequate alternate forum.  As such, the Court declines to dismiss the case based on *forum non conveniens*.

In light of the above analysis, the Court finds that it has specific personal jurisdiction over Ayala and ECR based on their roles in purposely distributing *Rompe* in Illinois.  It is therefore unnecessary, and the Court declines, to examine other possible bases for jurisdiction over Ayala and ECR.  The Court also finds it lacks personal jurisdiction over Los Cangris.  As such, the Ayala Defendants' Motion to Dismiss is denied with respect to Ayala and ECR, and is granted as to Los Cangris.

**B.  Ayala Defendants and UMG's Motions to Transfer Venue**

The Ayala Defendants argue that, if this Court decides it has jurisdiction over them, the case should be transferred to the United States District Court for Puerto Rico.  UMG also argues that the case should be transferred, first to the Central District of California, or, in the alternative, to the Puerto Rico District Court.  Plaintiff argues against transfer.  For the reasons stated below, the Court agrees that the case should be transferred to the District of Puerto Rico.

### 1.  *28 U.S.C. § 1404(a) Legal Standard*

A district court may transfer a civil action to any district or division where the case may have been brought "for the convenience of parties and witnesses, in the interest of justice."

28 U.S.C. § 1404(a). A transfer under § 1404(a) is proper if: (1) venue is proper in the transferor court; (2) venue is proper in the transferee court; and (3) transfer will serve the convenience of the parties and promote the interest of justice. *See Kammin v. Smartpros, Ltd.,* No. 07 C 2665, 2007 U.S. Dist. LEXIS 75914 at *1-2 (N.D. Ill. Oct. 9, 2007). The moving party bears the burden of establishing that the transferee forum is "clearly more convenient." *Id.* Because determining whether transfer is appropriate requires "a large degree of subtlety and latitude," the decision is left to the sound discretion of the trial judge. *Jewel America, Inc. v. Combine Int'., Inc.*, No. 07 C 3596, 2007 U.S. Dist. LEXIS 89026 at *4 (Nov. 30, 2007).

### 2. *Motion to Transfer Venue Analysis*

#### a. *Venue*

The Court must first consider whether venue is proper in this Court as well as the two proposed alternative venues. Ayala and ECR concede that if the Court finds them subject to personal jurisdiction, venue is also proper. Since this Court has determined it has personal jurisdiction over Ayala and ECR, and UMG does not contest the jurisdiction or venue of this Court, this Court is a proper venue for this action.

None of the parties contest that the District of Puerto Rico would be a proper venue. Plaintiff admits that he could have

brought suit there, Ayala and ECR move to transfer there, and UMG argues in the alternative to transfer there.

While Plaintiff and UMG agree that the Central District of California would also be a proper venue, Ayala and ECR summarily disagree based on the same arguments they made that this Court did not have jurisdiction over them. Since the Court rejected those arguments, it believes the Central District of California would be a proper venue, as well.

> b. *Convenience of the Parties and Witnesses*

With respect to examining the convenience of the parties or witnesses, courts look at a variety of factors including: (1) location of material events; (2) the plaintiff's choice of forum; (3) the relative ease of access to sources of proof; (4) the convenience of the witnesses; and (5) the convenience of the parties. *Amoco Oil Co. v. Mobil Oil Corp.*, 90 F.Supp.2d 958, 960 (N.D. Ill. 2000). The Court will examine each factor.

> i. Location of Material Events

The first factor courts consider is the location of material events. "Intellectual property infringement suits often focus on the activities of the alleged infringer, its employees, and its documents; therefore, the location of the infringer's principal place of business is often the critical and controlling consideration." *Jewel America,* U.S. Dist. LEXIS 89026 at *6; *see also, Tensor Group, Inc. v. All Press Parts & Equip., Inc.,* 966

F.Supp. 727, 730 (N.D. Ill. 1997).  Plaintiff acknowledges that "one locus of operative facts is the place where the infringing product was designed and developed," but argues there can be multiple loci of operative facts, including the source of where damages occurred.  Pl.'s Resp. at 20-21.

According to Ayala, *Rompe* was written, produced and recorded in Puerto Rico.  He also claims that all of the people involved in that process, except for Samuel Fish, are located in Puerto Rico.  Plaintiff may argue that the alleged sales of *Rompe* in Illinois make this the location of operative facts, but it appears that *Rompe* has been sold throughout the country.  Forum sales are insufficient to establish a substantial connection to the forum if the defendant's goods are sold in many states.  *Jewel America,* 2007 U.S. Dist. LEXIS 89026 at *6.  The fact that some copies of the allegedly infringing song were sold in Illinois does not establish a strong connection between Illinois and this case.  *Id.*  Indeed, if there is another locus of material facts besides Puerto Rico, it is certainly not Illinois.  It would be Mexico, where Plaintiff alleges he wrote *Anoche*, and from where it was stolen, or, to a lesser extent, California, from where *Rompe* was marketed and distributed.

In this case, it is clear that none of the material facts occurred in this forum.  The alleged infringement, if it occurred, took place where *Rompe* was written, produced and recorded - in

Puerto Rico.  As such, this factor favors transfer to the District of Puerto Rico, and to a lesser extent, to the Central District of California.

### ii.  The Plaintiff's Choice of Forum

Generally, a plaintiff's choice of forum is given substantial weight if he resides in the forum state.  *Jewel America,* 2007 U.S. Dist. LEXIS 89026 at *5.  The plaintiff's forum choice is accorded less weight, however, if the plaintiff does not reside there or if the forum lacks significant contact with the litigation.  *Id.*

This District is not the home forum of Plaintiff, who resides in Mexico.  And, as explained above, Illinois is not a site of the material events underlying the suit, which took place in Puerto Rico.  While both of these facts weigh heavily against Plaintiff's forum choice, Plaintiff asserts that "as a resident of Mexico, [he] cannot bring suit in his home district, so his choice of venue is entitled to deference."  Pl.'s Resp. at 23.  Plaintiff cites no case to support this notion, and the Court sees no reason why his forum choice should enjoy deference, particularly when it is not the forum where the material events underlying the suit occurred.  As such, the Court gives only minimal deference to Plaintiff's forum choice.

### iii.  Relative Ease of Access to Proof

The next factor to consider is the access to evidence at each location.  Plaintiff makes no effort to argue that there are

relevant documents or other sources of proof in Illinois that make this forum the most convenient for this case. Instead, Plaintiff says this factor is neutral because of "modern photocopying technology and electronic storage." Pl.'s Resp. at 21. The Ayala Defendants agree with Plaintiff, while UMG argues there are no sources of proof in this District, but that it has extensive business records related to Plaintiff's alleged damages within the Central District of California.

The Court agrees that access to proof is less of a consideration due to technological advancements that have lessened traditional concerns about access to evidence. "In this age of faxing, scanning and overnight courier services . . . the location of documentary evidence is largely irrelevant." *Jewel America,* 2007 U.S. Dist. LEXIS at *7. The Court acknowledges UMG's claim that it possesses records in California, but UMG failed to indicate what those records are, what format they are in or that they are so extensive as to be a burden to transport. The Court accords this factor little weight.

### iv. Convenience of the Witnesses

The next factor is the convenience of the witnesses. This factor is often given the most weight. *Kammin*, 2007 U.S. Dist. LEXIS at *5. Courts focus on the convenience of non-party witnesses, and give little weight to party witnesses. *Id.* at *6. When evaluating the convenience of the witnesses, consideration may

include the number of potential witnesses located in the two
venues, the expense of transportation, the nature and necessity of
the witnesses' testimony and whether the witnesses can be compelled
to testify. *Id*.

The parties identify several witnesses spread across the three
potential forums. Ayala's promoter, CMN, is located in Chicago.
Plaintiff claims CMN is "a critical third party witness" because it
will have evidence of whether *Rompe* was performed at Ayala's
concerts, and it will have ticket sales for shows at which *Rompe*
was performed. Ayala and ECR identified five non-party witnesses
for whom the District of Puerto Rico will be a more convenient
forum. Bina Motta, DJ Monserrate, DJ Urba, Eddie Avila and Nomar
Ayala are all residents of Puerto Rico and all allegedly helped
produce *Rompe*. UMG identifies HHH as a witness in California
involved in the relevant events, and argues that there are no
material witnesses in this District.

The Court agrees with Defendants that the most material non-
party witnesses to this action do not reside in this District. Mr.
Canelo, the alleged thief of Plaintiff's *Anoche*, is a highly
material witness. But he resides in Mexico. In terms of
importance with respect to the infringement claims, the Court
believes that those witnesses who Defendants claim were involved in
the writing, recording and producing of *Rompe*, such as DJ
Monserrate, Eddie Dee and DJ Urba, will provide important

testimony.  According to Ayala, all of those individuals, except
for Samuel Fish, reside in Puerto Rico.  This strongly favors
transfer to Puerto Rico.  However, the Court appreciates
Plaintiff's point that despite Ayala's statement that they live in
Puerto Rico, both DJ Monserrate and DJ Urba were dismissed as
defendants because they could not be found.

Based on the descriptions given by the parties, the Court does
not view CMN and HHH to be material witnesses with respect to the
infringement claim. Plaintiff claims that CMN "has evidence as to
whether *Rompe* was performed at a given show" and of ticket sales,
but no such evidence has been produced.  In addition, such
information is less material, as it does not deal with the alleged
events surrounding the creation of the allegedly infringing song.
Similarly, while HHH might be a witness due to its alleged role in
distributing *Rompe*, those facts are secondary to the more material
events – writing, producing and recording the song.

While no forum is convenient for all of the witnesses, it is
clear that this forum is convenient to at most one witness, CMN,
whose materiality is questionable.  The presence of Eddie Dee in
particular, as well as the other Puerto Rican witnesses identified
by Ayala, indicates that transfer to Puerto Rico is proper.  But
less weight will be given to this factor due to the fact that two
of the key witnesses, DJ Monserrate and DJ Urba, could not be

located in Puerto Rico.  This factor weighs only slightly in favor of transfer to Puerto Rico.

### v.  Convenience of the Parties

The next consideration is the convenience of the parties.  In considering the convenience of the parties, a court should consider where the parties reside and their respective abilities to bear the expense of a trial in a particular forum.  *Kammin,* 2007 U.S. Dist. LEXIS 75914 AT *5.  A court will not transfer a case if doing so will simply shift the inconvenience from one party to another. *Medi USA L.P. v. Jobst Inst., Inc.,* 791 F.Supp. 208, 211 (N.D. Ill. 1992).

The Defendants clearly favor their home forums of California and Puerto Rico, though UMG concedes that the case should be transferred to Puerto Rico if not California.  Plaintiff claims he is an English teacher in San Miguel de Allende, Mexico of modest means who would prefer that his case proceed in this District because he has family here and the flight would be less expensive for him.  Defendants question whether travel to this venue truly will be less expensive for him, as well as whether he is really paying for any of his legal services with respect to this case.

With respect to the parties' ability to bear the expense of litigation in a particular forum, the Defendants are better able to handle the expense and excessive travel of litigating in any of these forums.  But while the Court accepts Plaintiff's sworn

statement that he is a man of modest means, his credibility takes a bit of a hit when the forum he designates as most convenient involves traveling more than 1900 miles across two countries and five states. None of the parties reside anywhere close to this District. Allowing this case to remain here is convenient for none of the parties, as extensive travel will be required for all of them. Any lessened financial burden that Plaintiff may enjoy litigating here simply does not justify forcing all parties to travel across the country to do so. Thus, the residence of the parties favors transferring to either California, where one defendant resides, or to Puerto Rico, where two defendants reside. Because two of the Defendants (and a third potential defendant, Los Cangris) reside in Puerto Rico, and UMG agrees that the case could be transferred there, this factor weighs in favor of transfer to Puerto Rico.

### c. The Interests of Justice

The interests of justice factor "embraces traditional notions of judicial economy, rather than the private interests of the litigants and their witnesses." *Tensor Group,* 966 F.Supp. at 730. Factors a court may examine in weighing the interests of justice include (1) the court's familiarity with the applicable law; (2) the speed at which the case will proceed to trial; and (3) the desirability of resolving controversies in their locale. *Kammin*, 2007 U.S. Dist. LEXIS 75914 at *3.

### i. Familiarity with Applicable Law

Copyright infringement under the Copyright Act is a question of federal law that all three district courts are equally competent to decide. *See Tensor Group,* 996 F.Supp. at 731. Thus, this factor is neutral.

### ii. Speed to Trial

To determine the relative speed with which the case will be resolved, courts look to the Federal Court Management Statistics for "(1) the median months from filing to disposition and (2) the median months from filing to trail." *Amoco Oil*, 90 F.Supp.2d at 962. According to the Federal Court Management Statistics, in this District, the median time from filing to disposition is 6.5 months, and from filing to trial is 31.2 months. For the District of Puerto Rico, the median time from filing to disposition is 10.8 months, and from filing to trial is 21.5 months. For the Central District of California, the median time from filing to disposition is 5.2 months, and from filing to trial is 19.2 months. This factor favors the Central District of California, though the Court notes that cases go to trial nearly a year faster in either Puerto Rico or the Central District of California. Thus, this factor favors transfer.

### iii. Locales' Interest in Controversy

The next factor is the different venues' interest in the controversy. "Resolving litigated controversies in their locale is

a desirable goal of the federal courts." *Doage v. Bd. of Regents,* 950 F.Supp. 258, 262 (N.D. Ill. 1997). Illinois has an interest in preventing infringers from selling infringing materials within its boundaries. *See Jewel America,* 2007 U.S. Dist. LEXIS 89026 at *10. However, that interest is shared by all states in which *Rompe* was sold. *See id.* Puerto Rico, where Ayala and ECR are based and where the alleged infringing song was written, recorded and produced, has the significant interest of deterring its citizens from committing copyright infringement. California, where UMG is based and from where the song was distributed, would also have the additional interest of deterring its citizens from distributing infringing materials. This factor favors transfer from this District, specifically to Puerto Rico over California, since the alleged acts of infringement took place there with the creation of *Rompe*.

### 3. *Motion to Transfer Conclusion*

An analysis of these factors shows that transfer is proper in this case. This forum simply has too little connection to this case. None of the parties reside in the Midwest, let alone in this District. The few connections this forum has to the case are weak. Copies of *Rompe* were sold here, but they were sold throughout the country. One potential witness, CMN, resides here, but it is not a witness to the actual infringement and more critical witnesses reside elsewhere. Plaintiff believes litigating here will be

cheaper for him, but it is not clear how much less expensive or that such savings justify making all of the Defendants travel across the country to litigate in a forum with so little connection to the case.

California has some connection to the case, since that is where Defendant UMG and potential witness HHH is located.  But the operative facts underlying Plaintiff's copyright infringement claims occurred in Puerto Rico, where Ayala claims he wrote, recorded and produced *Rompe* (and in Mexico, where *Anoche* was allegedly created).  Two of the Defendants, Ayala and ECR, are in Puerto Rico, and Los Cangris is a corporation organized under the laws of Puerto Rico, should Plaintiff wish to pursue his claims against Los Cangris there.  Several of the witnesses reside in Puerto Rico.  Puerto Rico has a greater interest in preventing its residents from engaging in copyright infringement, and it can bring the case to trial faster than this district.  Puerto Rico is the appropriate, and most convenient, forum for this case.

For the reasons stated herein, the remaining Ayala Defendants' Motion to Transfer Venue to the District of Puerto Rico is granted.  UMG's Motion to Transfer Venue to the Central District of California is denied.

### C.  UMG's Motion to Strike Claims for Punitive Damages, Statutory Damages and Attorneys' Fees

After UMG filed its Motion to Strike Plaintiff's Claims for Punitive Damages, Statutory Damages and Attorneys' Fees, Plaintiff

sought leave to amend its Complaint and remove those claims. ECF No. 100. The Court granted leave on November 27, 2012, and Plaintiff's Third Amended Complaint no longer contains the claims UMG asked this Court to strike. ECF Nos. 100-1, 113. As such, the Motion is moot, and the Court will deny it.

### IV.  CONCLUSION

For the reasons stated herein, the Court rules as follows:

1.  the Ayala Defendants' Motion to Dismiss (ECF No. 77) is denied with respect to Ayala and El Cartel and granted as to Los Cangris;

2.  the Ayala Defendants' Motion to Transfer Venue to the District of Puerto Rico (ECF. No. 77) is granted;

3.  UMG's Motion to Transfer Venue to the Central District of California (ECF No. 58) is denied; and

4.  UMG's Motion to Strike Claims for Punitive Damages, Statutory Damages and Attorneys' Fees (ECF No. 58) is denied as moot.

**IT IS SO ORDERED.**

_____
     Harry D. Leinenweber, Judge
     United States District Court

Date:3/29/2013