# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| DAVID MOSER, a/k/a JOSE DALLMAN,  Plaintiffs  v.  RAMON AYALA p/k/a DADDY YANKEE Et. Al.  Defendants | CIVIL NO.:  313-cv-01329-JAG   COPYRIGHT INFRINGEMENT  JURY TRIAL DEMANDED |

## RULE 26 JOINT REPORT OF THE PARTIES

1.  **State when the parties conferred as required by Rule 26(f), and identify the counsel who conferred.**

    The Rule 26(f) meeting was held by teleconference on September 30, 2013. Fred Torres attended on behalf of Plaintiff David Moser a/k/a/ Jose Dallman ("Dallman"). Edwin Prado attended on behalf of defendants Ramon Ayala, p/k/a Daddy Yankee and El Cartel Records ("El Cartel") (jointly, "Ayala"); Roberto C. Quiñones-Rivera and Isabel Torres-Sastre attended on behalf of Interscope Records, a division of UMG Recordings, Inc. ("UMG").

2.  **List the cases related to this one that are pending in any state or federal court with the case number and court.**

    None.

3.  **Theory of the case.**

    <u>Plaintiff</u>:

    This is a copyright infringement case. Defendant Ramon Ayala p/k/a Daddy Yankee ("<u>Ayala</u>") is a well-known recording artist whose hit single *Rompe* (the "Infringing Song") is substantially similar to Plaintiff's prior work *Anoche* (the "Song").
    The Infringing song was copyrighted by Ramon Ayala's recording company, defendant El Cartel Records, and was distributed by Defendant Interscope Records, a division of UMG Recordings, Inc. ("UMG").

Plaintiff believes that Defendants had access to, copied, and incorporated substantial original portions of the Song *Anoche* into the Infringing Song *Rompe* and in subsequent and continuing derivative infringing works based on *Anoche*. There is a substantial similarity between *Rompe* and *Anoche,* due to Defendants' copying of Plaintiff's song. The Infringing Song, *Rompe,* and Plaintiff's Song. *Anoche,* are substantially similar because they coincide melodically, rhythmically and harmonically. Alternatively, the Infringing Song and derivative works based on the Infringing Song are each separate derivative works of Plaintiff's Song as the musical score of the Infringing Song and its derivative works are, *inter alia,* a response, sequence and reflection of Plaintiff's Song and track the same ideas, evolution and development to the original music of Plaintiff's Song.

Plaintiff believes that Defendants was aware of, participated in and contributed to the exploitation of the Infringing Song, in the United States, in Latin America, and in other foreign jurisdictions through sales of compact discs, digital downloads, radio and television airplay and otherwise.

Defendants have earned continuously from the release of the Infringing Song *Rompe* up to and including the present, and will continue to earn in the future, substantial sums through their exploitation of the Infringing Song and its derivative works. Defendants (i) have earned continuously from the release of "Rompe" up to and including the present and will continue to earn in the future substantial sums through their exploitation of the Infringing Song and its derivative works; and (ii) have from the release of "Rompe" up to and including the present and will continue to actively exploit the Infringing Song worldwide.

Since releasing *Rompe* up to and including the present, Defendants have profited enormously from album sales, royalties, concert and ancillary-products and profits from derivative exploitation of the Song in the Infringing Song and its derivative works.

Defendants never sought nor obtained Plaintiff's permission to copy, duplicate, perform, or create derivative works from or otherwise use Plaintiff's Song in the composition, sound recording and other tangible expressions of the Infringing Song and its derivative works.

Plaintiff complied with the registration requirements for copyrighting musical works under the Federal Copyright Act of 1976 for the Song. Plaintiff is the owner of the copyright for the Song under U.S. law; additionally, he is the owner of a copy of the Song's music and lyrics, certified by a Mexican notarial authority on February 11, 2002.

Defendants are liable for infringing Plaintiff's song by reproducing, marketing, promoting, selling, copying, publicly displaying, creating derivative works from, and distributing for purposes of trade, unauthorized copies of Plaintiff's Song, all in violation of 17 U.S.C. §§ 106 & 501, *et seq*. Defendants are additionally liable for contributory copyright infringement and for vicarious copyright infringement.

Plaintiff did not know, and in the exercise of reasonable diligence, could not have known, of Defendants' continuing infringement of Plaintiff's Song until recently because, among other reasons, Plaintiff resided continuously in Mexico during the Continuing Infringement Period; Plaintiff was disabled for a substantial

part of the Continuing Infringement Period; Defendants concealed and misrepresented the creation and ownership of the Infringing Song by *inter alia* copyrighting the Infringing Song in the name of Defendant El Cartel Records; and Defendants have continued during the entire Continuing Infringement Period to change the manner and method of their infringement of Plaintiff's Song by *inter alia* creating derivative works from the Song and the Infringing Song.

Plaintiff seeks the following relief as a result of Defendants' conduct and violations:

(i) That Defendants be enjoined from

    (a)    reproducing, copying, publishing, distributing, or publicly displaying Plaintiff's Song and from otherwise infringing Plaintiff's copyrights;

    (b)    contributing to the above conduct;
    (c)    inducing the above conduct; and
    (d)    profiting from the above conduct.

(ii) That Defendants be ordered to destroy all infringing, copies or phonorecords made or used in violation of Plaintiff's copyright, and of all plates, molds, matrices, masters, tapes, film negatives, or other articles by means of which such copies or phonorecords may be reproduced, as provided by 17 U.S.C. § 503(a).

(iii) That Plaintiff be awarded his actual damages.

(iv) That Defendants disgorge to Plaintiff all profits received through the infringing acts.

(v) That an accounting be made for all profits, income, receipts or other benefits derived by Defendants and each of them from infringement of Plaintiff's Song.

(vi) That Defendants pay to Plaintiff general damages in an amount to be proven.

(vii) That Plaintiff be awarded his costs.

Plaintiff has previously stipulated that he is not seeking his attorneys' fees or statutory damages.

Ayala: "Rompe is a song created on or about 2005 by Ramon Ayala (artistically known as "Daddy Yankee", hereinafter "DY"); Eddie Avila ("Eddie Dee"); Urbani Molta ("DJ Urba") and Samuel Fish. Said song was an international "hit" interpreted by DY.

Plaintiff is an unknown Mexican artist who has never had a radio hit in the U.S. "Anoche" is an unknown song that as far as we know has never been publicly performed in the U.S. Even assuming arguendo that Plaintiff's work "Anoche" is substantially similar to "Rompe", the composers of "Rompe" did not have any access to Plaintiff's work either in the U.S. or elsewhere prior to creating "Rompe". As a matter of fact, the first time that the Ayala parties learned of the existence of "Anoche" was after they were sued.

3

Plaintiff alleges that the song *Rompe*, distributed by UMG for El Cartel Records, Inc./Interscope Records is substantially similar to, and infringes on his copyright in, the song *Anoche*, which Plaintiff registered with the United States Copyright Office. Specifically, Plaintiff claims that *Rompe* infringes on a chord progression and rhythm that is part of *Anoche*. Ayala submits that Plaintiff's alleged copyright registration is invalid because the allegedly infringed portions of *Anoche* lack originality. The element of *Anoche* that Plaintiff claims to have been infringed by *Rompe* is a chord progression and rhythm that existed in the prior art long before Plaintiff's alleged composition in such songs, among others, as *Hit the Road, Jack*, released in 1961 by Ray Charles.

Additionally, Plaintiff's claims are time-barred pursuant to 17 U.S.C. § 507(b), as the complaint was filed more than three years after the release of *Rompe*, at which time Plaintiff knew or should have known of the alleged infringement because the song became a huge commercial success, as alleged by Plaintiff in the complaint.

Moreover, Plaintiff is barred from recovering statutory damages and attorneys' fees, pursuant to 17 U.S.C. § 412, because he failed to register the copyright before the first act of alleged infringement.

Furthermore, Plaintiffs failed to join an Indispensable Party, namely "Los Cangris, Inc." the publisher that controls and administers the copyright of "Rompe".

Finally, none of the composers of "Rompe" had access to the alleged copyright work "ANOCHE".

UMG: Plaintiff alleges that the song *Rompe*, distributed by UMG, is substantially similar to, and infringes on his copyright in, the song *Anoche*, which Plaintiff registered with the United States Copyright Office. Specifically, Plaintiff claims that *Rompe* infringes on a chord progression and rhythm that is part of *Anoche*. UMG submits that Plaintiff's alleged copyright registration is invalid because the allegedly infringed portions of *Anoche* lack originality. The element of *Anoche* that Plaintiff claims to have been infringed by *Rompe* is a chord progression and rhythm that existed in the prior art long before Plaintiff's alleged composition in such songs, among others, as *Hit the Road, Jack*, released in 1961 by Ray Charles.

Additionally, Plaintiff's claims are time-barred pursuant to 17 U.S.C. § 507(b), as the complaint was filed more than three years after the release of *Rompe*, at which time Plaintiff knew or should have known of the alleged infringement because the song became a huge commercial success, as alleged by Plaintiff in the complaint.

Moreover, Plaintiff is barred from recovering statutory damages and attorneys' fees, pursuant to 17 U.S.C. § 412, because he failed to register the copyright before the first act of alleged infringement.

4. **Applicable law.**

   Plaintiff:  U.S. Copyright Act, 17 U.S.C. § 101, *et seq*

   UMG: U.S. Copyright Act, 17 U.S.C. § 101, *et seq.*

   Ayala: U.S. Copyright Act, 17 U.S.C. § 101, *et seq.*

5. **Briefly describe what the case is about.**

   Plaintiff:  This is a copyright infringement case.  Defendant Ayala, professionally known as Daddy Yankee, is a well-known recording artist whose hit single *Rompe,* produced by his record company, defendant El Cartel, and distributed by defendant UMG, is substantially similar to Plaintiff Dallman's prior work *Anoche*.

   Ayala:  "Rompe is a song created and published on or about 2005 by Ramon Ayala (artistically known as "Daddy Yankee", hereinafter "DY"); Eddie Avila ("Eddie Dee"); Urbani Molta ("DJ Urba") and Samuel Fish. Said song was an international "hit" interpreted by DY and distributed and sold internationally including specifically Mexico. Rompe was sold and distributed by UMG/Interscope Records/El Cartel Records.

   Plaintiff is an unknown Mexican artist who has never had a radio hit in the U.S. "Anoche" is an unknown song that has never been publicly performed in the U.S. Even assuming arguendo that Plaintiff's work "Anoche" is substantially similar ton Rompe, the composers of "Rompe" did not have any access to Plaintiff's work either in the U.S. or elsewhere prior to creating "Rompe". As a matter of fact, the first time that the Ayala parties and the composers learned of the existence of "Anoche" was after they were sued in the above captioned case.

   In sum, ANOCHE is not substantially similar to ROMPE. The composers of ROMPE had no access to ANOCHE and therefore, there is no copyright infringement. Even if there is a copyright claim it is time barred.

   UMG:  Plaintiff alleges that the song *Rompe* infringes on a chord progression and rhythm that is part of *Anoche*.  UMG submits that Plaintiff's alleged copyright registration is invalid because the allegedly infringed portions of *Anoche* lack originality.  Also, Plaintiff's claims are time-barred pursuant to 17 U.S.C. § 507(b), as the complaint was filed more than three years after the release of *Rompe*.  Further, Plaintiff is barred from recovering statutory damages and attorneys' fees under 17 U.S.C. § 412 because he failed to register the copyright before the alleged infringement commenced.

5

6. **Specify the allegation of federal jurisdiction.**

   Jurisdiction is proper because the action arises under the Copyright Act, Title 17 of the United States Code. 17 U.S.C. § 101 *et seq*. This Court is vested with jurisdiction pursuant to 28 U.S.C. § 1338.

7. **Name the parties who disagree and the reasons.**

   None.

8. **List anticipated additional parties that should be included, when they can be added, and by whom they are wanted.**

   Plaintiff: Defendants have taken the position—although they have not pled—that Los Cangris, Inc. is an indispensable party; as Defendants acknowledge, Plaintiff served Los Cangris, and the return of service is Document No. 47 of the pleadings in this case. Los Cangris entered an appearance in this matter in the United States District Court for the Northern District of Illinois and moved to dismiss for lack of personal jurisdiction. The Court granted Los Cangris's motion. Plaintiff seeks leave to re-serve Los Cangris in this Court.

   Ayala: None at this time.

   UMG: None known at this time.

9. **List anticipated interventions.**

   Plaintiff: None known at this time.

   Ayala: None at this time.

   UMG: None known at this time.

10. **Describe class-action issues.**

    None.

11. **State whether each party represents that it has made the initial disclosures required by Rule 26(a). If not, describe the arrangements that have been made to complete the disclosures.**

The parties agree that initial disclosures shall be made by October 30, 2013.

12. **Describe the proposed agreed discovery plan, including:**

   A. **Responses to all the matters raised in Rule 26(f).**

   The parties have conferred on the items in Rule 26(f).

   B. **When and to whom the plaintiff anticipates it may send interrogatories and/or requests for production.**

   Plaintiff plans to send interrogatories and requests for production to all defendants by October 30, 2013.

   Plaintiff additionally plans to propound notices of depositions on written questions upon Apple, Inc., Amazon, and Cardenas Marketing Network.

   C. **When and to whom the defendant anticipates it may send interrogatories and/or requests for production.**

   Ayala and El Cartel plan to serve interrogatories and requests for production of documents and admissions to Plaintiff by October 30, 2013.

   UMG plans to serve interrogatories and requests for production to Plaintiff by October 30, 2013.

   D. **Of whom and by when the plaintiff anticipates taking oral depositions.**

   Dallman currently anticipates taking the depositions of Ayala, a representative of El Cartel, and a representative of UMG.  Additionally, Dallman may depose Guillermo Duran and/or Salomon Canelo, any fact witnesses developed through discovery, Defendants' expert witnesses, and any other witnesses Defendants may announce.  Plaintiff will endeavor to take all oral depositions of fact witnesses by March 31, 2014, subject to being able to secure the attendance at deposition of any Mexican witnesses.

   E. **Of whom and by when the defendant anticipates taking oral depositions.**

   Ayala: Ayala plans to take depositions of Plaintiff, his expert witness, Salomon Canelo, and any other witnesses that Plaintiff may announce.

   UMG:  UMG plans to take depositions of Plaintiff, his expert witness and any other witnesses that Plaintiff may announce.

7

F. **When the plaintiff (or the party with the burden of proof on an issue) will be able to designate experts and provide the reports required by Rule 26(a)(2)(B), and when the opposing party will be able to designate responsive experts and provide their reports.**

Dallman will designate his expert witness(es) and provide reports by November 15, 2013.

Defendants will designate their expert witnesses and provide reports 30 days after Plaintiff submits his experts' reports.

G. **List expert depositions the plaintiff (or the party with the burden of proof on an issue) anticipates taking and their anticipated completion date. See Rule 26(a)(2)(B) (expert report).**

Dallman will depose defendants' experts before the close of discovery.

H. **List expert depositions the opposing party anticipates taking and their anticipated completion date. See Rule 26(a)(2)(B) (expert report).**

Ayala: Ayala will depose plaintiff's expert before the close of discovery and before plaintiff takes the deposition of any of defendants' experts.

UMG: UMG will depose plaintiff's expert before the close of discovery and before plaintiff takes the deposition of any of defendants' experts.

13. **If the parties are not agreed on a part of the discovery plan, describe the separate views and proposals of each party.**

Plaintiff: Plaintiff agrees that the discovery deadline should be June 27, 2014.

Ayala: Ayala proposes, in light of the issues in this case and the trial date set by the Court, that the discovery deadline be June 27, 2014.

UMG: UMG proposes, in light of the issues in this case and the trial date set by the Court, that the discovery deadline be June 27, 2014.

14. **Specify the discovery beyond initial disclosures that has been undertaken to date.**

Prior to the transfer of this case to this Court, Dallman propounded requests for production and interrogatories to the defendants related solely to jurisdiction and venue.

**15.    State the date the planned discovery can be reasonably completed.**

The parties agree to a discovery deadline of June 27, 2014.

Ayala submits that, in light of the issues in this case and the trial date set by the Court, the discovery deadline should be June 27, 2014.

UMG submits that, in light of the issues in this case and the trial date set by the Court, the discovery deadline should be June 27, 2014.

**16.    Describe the possibilities for a prompt settlement or resolution of the case that were discussed in your Rule 26(f) meeting.**

Plaintiff:  Dallman is amenable to mediation.  Several months ago Ayala made a nominal settlement offer, to which Dallman made a counter-demand.  Defendants never responded to Dallman's counter-demand, which Dallman took to be a rejection.  Dallman has suggested further negotiations, but Ayala has failed to respond.

Ayala:  A settlement offer was made and it was rejected by Plaintiff. Defendant does not contemplate any other settlement offer or mediation at this time.

UMG:  Defendant UMG is not amenable to mediation at this time.

**17.    Describe what each party has done or agreed to do to bring about a prompt resolution.**

Dallman made a settlement demand in response to a nominal offer from Ayala and has agreed to mediate the case.

Ayala proposed a settlement offer and was rejected by the Plaintiff.

**18.    From the attorneys' discussion with the client, state the alternative dispute resolution techniques that are reasonably suitable, and state when such a technique may be effectively used in this case.**

Plaintiff:  Dallman is amenable to mediation.

Ayala:  Defendant Ayala is not amenable to mediation at this time.

UMG:  Defendant UMG is not amenable to mediation at this time.

19. **Magistrate judges may now hear jury and non-jury trials. Indicate the parties' joint position on a trial before a magistrate judge.**

    Plaintiff:  Plaintiff agrees to a trial before a magistrate judge

    Ayala: Ayala agrees to a trial before a magistrate judge.

    UMG:  UMG agrees to a trial before a magistrate judge.

20. **State whether a jury demand has been made and if it was made on time.**

    Plaintiff made a jury demand in his original complaint.

21. **Specify the number of hours it will take to present the evidence in this case.**

    Based upon facts currently known, the parties anticipate that it will take 40 hours to present the evidence in this case.

    Ayala: Ayala anticipates that it will take 40-60 hours for them to present the evidence of the case.

22. **List pending motions that could be ruled on at the initial pretrial and scheduling conference.**

    Plaintiff's Motion to Strike as Untimely the Answer of Defendants Ramon Ayala P/K/A Daddy Yankee and El Cartel Records to Plaintiff's Second Amended Complaint and for Entry of Default and Default Judgment.

    Defendant Ayala's Opposition to Plaintiff's Motion to Strike.

23. **List other motions pending.**

    None.

24. **Indicate other matters peculiar to this case, including discovery, that deserve the special attention of the court at the conference.**

    Difficulties that may be encountered in securing discovery from Mexico-based witnesses.

Ayala: In order to simplify the case and avoid unnecessary costs and waste of judicial resources, Ayala requests a bifurcation of the liability issue and damages.

25. **Certify that any non-governmental corporate parties have filed the disclosure required by Rule 7.1 of the Local Rules of the United States District Court for the District of Puerto Rico, listing the date of filing for original and any amendments.**

    Plaintiff:  Plaintiff is not a corporate party.

    Ayala:

    UMG:  UMG states that it filed the corresponding disclosure on September 30, 2013.

26. **List the names, bar numbers, addresses and telephone numbers of all counsel.**

    **Counsel for Plaintiff:**

    Freddie O. Torres Gómez
    USDC PR Bar No. 226409
    Tulipan 170
    Urb. San Francisco
    San Juan, PR 00927-6221
    Telephone: (787) 753-4712

    Linda Broocks (admitted *pro hac vice*)
    Federal Bar No. 930
    1900 Pennzoil South Tower
    711 Louisiana
    Houston, Texas  77002
    (713) 844-3000


    **Counsel for Defendants Ayala and El Cartel**

    Edwin Prado-Galarza
    USDCPR NO. 208804
    PRADO NUNEZ & ASSOCIATES, P.S.C.
    Del Parque Street 403
    8th Floor

San Juan, PR 00912
pradolaw@aol.com
(t) 787-977-1411
(f) 787-977-1410

**Counsel for Defendant UMG**

Roberto C. Quiñones-Rivera
rcq@mvpr.com
Isabel Torres Sastre
its@mcvpr.com
McConnell Valdés LLP
P.O. Box 364225
San Juan, PR 00936-4225
(787) 250-2631/759-9292
Fax (787) 474-9201

                Respectfully submitted,

                /s/Fred Torres
                    Freddie O. Torres Gómez
                    USDC PR Bar No. 226409
                    **ROBERT SUEIRO LAW OFFICE**
                    Tulipan 170
                    Urb. San Francisco
                    San Juan, PR 00927-6221
                    Telephone: (787) 753-4712

                /s/Linda Broocks
                    Linda Broocks
                    Federal Bar No. 930
                    **OGDEN, GIBSON, BROOCKS,**
                      **LONGORIA, & HALL, L.L.P.**
                    1900 Pennzoil South Tower
                    711 Louisiana Street
                    Houston, Texas 77002
                    (713) 844-3068

                **ATTORNEYS FOR PLAINTIFF**

/s/Edwin Prado

USDCPR NO. 208804
PRADO NUNEZ & ASSOCIATES, P.S.C.
Del Parque Street 403
8th Floor
San Juan, PR 00912
pradolaw@aol.com
(t) 787-977-1411
(f) 787-977-1410

**ATTORNEY FOR DEFENDANTS AYALA and EL CARTEL**

s/ *Roberto C. Quiñones-Rivera*
Roberto C. Quiñones-Rivera
USDC-PR No. 211512
rcq@mvpr.com

s/ *Isabel Torres-Sastre*
Isabel Torres Sastre
USDC-PR No. 229114
its@mcvpr.com

270 Muñoz Rivera Avenue
Hato Rey, Puerto Rico 00918
P.O. Box 364225
San Juan, Puerto Rico 00936-4225
Tel: (787) 250-2631
Fax: (787) 474-9207

**ATTORNEYS FOR DEFENDANT INTERSCOPE RECORDS, A DIVISION OF UMG RECORDINGS, INC.**